People v Alcaraz-Ubiles (2025 NY Slip Op 03929)

People v Alcaraz-ubiles

2025 NY Slip Op 03929

Decided on June 27, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 27, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, BANNISTER, MONTOUR, AND SMITH, JJ.

521 KA 16-02353

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAVID S. ALCARAZ-UBILES, DEFENDANT-APPELLANT. 

THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered August 3, 2016. The appeal was held by this Court by order entered March 24, 2023, decision was reserved and the matter was remitted to Supreme Court, Monroe County, for further proceedings (214 AD3d 1470 [4th Dept 2023]). The proceedings were held and completed. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the motion during trial seeking to suppress identification testimony is granted, and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of assault in the first degree (Penal Law § 120.10 [1]). When the appeal was previously before us, we concluded that Supreme Court erred in relying on evidence at trial to determine that the pretrial identification of him in a photograph by a prosecution witness was confirmatory, thus obviating the requirement that the People provide notice of the identification to defendant pursuant to CPL 710.30 (People v Alcaraz-Ubiles, 214 AD3d 1470 [4th Dept 2023]). In doing so, we summarized the record by finding that the witness had "disclosed on cross-examination at trial that he had identified defendant as the assailant in a photograph shown to him by the police" (id. at 1471). That factual finding was based upon the trial transcript showing that the witness—in response to being asked by defense counsel on cross-examination whether the police, after arresting defendant, had ever brought defendant for a showup identification so that the witness could see if defendant was the same person who had accompanied the witness on the day of the crime—answered that "[t]hey," i.e., the police, "showed [him] the picture." We then noted that the People's CPL 710.30 notice had not referenced that identification (id. at 1471). We further recounted as a factual matter that "[d]efense counsel thus asked the court to strike the witness's testimony on the ground of lack of notice"—which effectively constituted a motion to suppress that evidence (id., see CPL 710.40 [2]; 710.60 [5])—"but the court, relying on the witness's trial testimony, ruled that the People were not required to give notice because the identification was confirmatory" (Alcaraz-Ubiles, 214 AD3d at 1471).
We concluded that the court erred in so ruling because " 'prior familiarity should not be resolved at trial in the first instance' . . . , and, in any event, the witness's trial testimony was not sufficient to establish as a matter of law that the identification was confirmatory" (id. at 1471-1472, quoting People v Rodriguez, 79 NY2d 445, 452 [1992]). In support of our legal conclusion that the trial testimony was insufficient to establish a confirmatory identification as a matter of law, we specifically noted that, "[a]lthough the witness testified that he knew defendant because he had seen him 'a couple of times' at the barber shop, and that the two had each other's phone numbers, [the witness] also testified that he did not know defendant well, that he knew him only by a common nickname, and that they never spoke again after the assault" (id. at 1472). In light of that insufficiency, we reasoned that "[a] midtrial Rodriguez hearing would have [*2]allowed defense counsel to flesh out the extent of the relationship between the two men, thereby allowing the court to make a more informed determination as to whether the pretrial identification of defendant was confirmatory as a matter of law" (id.). We further concluded that the error was "not harmless because, even assuming, arguendo, that the proof of defendant's guilt, without reference to the error, is overwhelming, it cannot be said that 'there is no reasonable possibility that the error might have contributed to defendant's conviction' " (id., quoting People v Crimmins, 36 NY2d 230, 237 [1975]). We therefore "remit[ted] the matter to the trial court for a hearing to determine whether the witness knew defendant so well that no amount of police suggestiveness could have tainted the identification" (id. at 1471 [internal quotation marks omitted]).
After conducting a hearing on remittal during which the People called a police officer, an investigator, and the witness, the court concluded in a written decision that the witness knew defendant on the date of the assault, had been with defendant on several prior occasions, and was in defendant's presence on the date of the crime for such an adequate length of time and under sufficient lighting conditions that the witness's identification of defendant as the perpetrator of the assault had an independent basis. Defendant now contends on resubmission that the court erred in concluding, following the hearing, that the identification was merely confirmatory as a matter of law. We agree.
"A court's invocation of the 'confirmatory identification' exception is . . . tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification" (Rodriguez, 79 NY2d at 450). "In effect, it is a ruling that however suggestive or unfair the identification procedure might be, there is virtually no possibility that the witness could misidentify the defendant" (id.). "The People bear the burden in any instance they claim that a citizen identification procedure was 'merely confirmatory' " (id. at 452). "[T]he People must show that the protagonists are known to one another, or where . . . there is no mutual relationship, that the witness knows defendant so well as to be impervious to police suggestion" (id.). "[W]hether the exception applies depends on the extent of the prior relationship, which is necessarily a question of degree" (id. at 450). In determining whether the witness is sufficiently familiar with the defendant, a court may consider factors such as "the number of times [the witness] viewed [the] defendant prior to the crime, the duration and nature of the encounters, the setting, the period of time over which the viewings occurred, the time elapsed between the crime and the previous viewings, and whether the two had any conversations" (id. at 451).
Here, as stated above, we previously determined that the evidence was insufficient to establish that the witness's pretrial photo identification of defendant was confirmatory as a matter of law because, "[a]lthough the witness testified that he knew defendant because he had seen him 'a couple of times' at the barber shop, and that the two had each other's phone numbers, [the witness] also testified that he did not know defendant well, that he knew him only by a common nickname, and that they never spoke again after the assault" (Alcaraz-Ubiles, 214 AD3d at 1472). The evidence presented by the People at the Rodriguez hearing, however, was materially indistinguishable from the trial testimony that we already deemed insufficient, and in some respects the hearing evidence was even weaker. Specifically, the witness testified at trial that he had seen defendant a couple times at the barber shop (see id.), and the evidence at the hearing similarly established that the witness had either interacted with defendant twice or approximately four or five times including a couple of times at the barber shop. Just like his testimony at trial, the witness testified at the hearing that he knew defendant "not much but a little bit," that he knew defendant only by his nickname and not his given name, and that he never heard from defendant again after the assault (cf. id.). Moreover, while the witness claimed at trial that he and defendant had each other's phone numbers (see id.), the evidence at the hearing was that the witness did not have a phone number for defendant.
The other evidence presented at the hearing was likewise weak with respect to the witness's ostensible familiarity with defendant. The People's presentation of the witness's statement to the police in which he characterized the perpetrator as a friend was contradicted by the witness's own hearing testimony that he and the perpetrator "weren't friends." Additionally, the witness never provided a physical description of the person he knew by nickname only, including anything about tattoos or other distinctive features that would show familiarity. Related to the absence of any physical description of the perpetrator, the witness also never [*3]provided any testimony upon which to support the conclusion that he had intensely focused on the facial or other distinctive features of the perpetrator as they rode in a vehicle together in close proximity to and from the scene of the crime (cf. People v Breland, 83 NY2d 286, 295 [1994]; People v Myles, 216 AD3d 1419, 1422 [4th Dept 2023], lv denied 40 NY3d 936 [2023]).
In sum, given the meager facts adduced by the People at the Rodriguez hearing regarding the witness's purported familiarity with defendant, we conclude that the People failed to meet their burden of establishing that the witness was so familiar with defendant that there was little or no risk that police suggestion could lead to a misidentification (see e.g. People v Coleman, 73 AD3d 1200, 1202-1203 [2d Dept 2010]; People v Coleman, 306 AD2d 549, 551 [3d Dept 2003]; see generally Rodriguez, 79 NY2d at 450-452). We therefore reverse the judgment of conviction, grant defendant's motion during trial seeking to suppress the identification testimony in question, and grant a new trial. We have considered defendant's remaining contention raised on resubmission and conclude that it does not warrant any further relief on direct appeal. Finally, in light of our determination, we do not address defendant's remaining contentions raised in his original brief.
Entered: June 27, 2025
Ann Dillon Flynn
Clerk of the Court